UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SUE KOBOLD,                                                6:12-cv-02082-TC

Plaintiff,

v.                          FINDINGS AND RECOMMENDATION

GOOD SAMARITAN REGIONAL
MEDICAL CENTER,

Defendant.

COFFIN, Magistrate Judge:

Defendant Good Samaritan is a hospital located in Corvallis, Oregon. (#7 at ¶ 1). Since 1996,

plaintiff has worked for defendant as an operating room nurse. (#7 at ¶ 2). Plaintiff, and the other

nurses at Good Samaritan are represented by a union, the Oregon Nurses Association ("ONA"), and

are subject to a collective bargaining agreement ("CBA") that governs, among other things, terms

of employment, wages, extra shift premium pay, and grievance procedures. (#s 7-1, 7-2, 7-3, and 7-

4). Specifically, Appendix L of the CBA sets forth a provision that governs extra shift premium pay

for hours that nurses work in excess of their regular hours. Id.

Page 1 - FINDINGS AND RECOMMENDATION

On June 1, 2010, defendant received a grievance from plaintiff, in which plaintiff complained that, in violation of the CBA, defendant refused to pay extra shift premium pay for "orphan shifts" that became available as a result of an Operating Room Tech being injured. (#7-5). Defendant denied the grievance on June 1, 2010, and ONA advanced the grievance to Step Two on June 17, 2010, which was again denied by defendant on June 28, 2010. (#s 7-7 and 7-8). Neither plaintiff nor ONA advanced the grievance beyond Step Two. (#7 at ¶11).

Meanwhile, ONA was already processing a separate grievance that it had brought on behalf of the bargaining unit that involved the same practice about which plaintiff's grievance addressed. (#7 at ¶ 12; 7-9 ). In July 2010, defendant changed its policy for posting extra operating room shifts, but refused to retroactively issue back pay to nurses who worked the operating room shifts as extra shifts as defined in the CBA. (#7-10). As a result, ONA took the grievance forward to arbitration which was scheduled for September 21, 2011. (#7-15) However, the arbitration was cancelled on September 9, 2011, after ONA and defendant reached a settlement on the issue of backpay relating to defendant's practices in April 2010-July 2010. (#9-1). In October 2011, as a result of the settlement, plaintiff and other nurses were reimbursed for unpaid premium shift pay, with plaintiff receiving $2,216.68. (#8 at ¶ 9). Plaintiff's June 2010 grievance, and the ONA 2010 grievance which was settled prior to arbitration were the only grievances filed by plaintiff or on plaintiff's behalf relating to extra shift premium pay. (#8 at ¶ 10).

However, on September 28, 2012, plaintiff filed a suit against defendant in Benton County Circuit Court alleging two causes of action, the first under ORS 652.120 for unpaid wages, and the second under ORS 652.615 for unlawful deductions. (#1-2). In her complaint, plaintiff alleges that on or around October 2011, defendant determined that, due to a calculation error, it failed to pay

Page 2 - FINDINGS AND RECOMMENDATION

plaintiff overtime pay for extra shifts she had worked over a number of years. (#1-2 at ¶4). Furthermore, plaintiff argues that after this realization, defendant failed to pay the wages due and owing. Id. Plaintiff seeks $24,000 in unpaid wages, as well as attorney's fees, costs, and disbursements. (#1-2).

On November 11, 2012, defendant removed the case to federal court on the basis that plaintiff's state law claims were preempted by § 301 of the Labor Management Relations Act ("LMRA"), and on December 4, 2012, filed a motion to dismiss, or in the alternative a motion for summary judgment. (#s 1 and 5). For the reasons explained below, I recommend that defendant's motion for summary judgment be granted.

## Legal Standard

Summary judgment is appropriate under FRCP 56 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order for summary judgment to be granted, there must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).

Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading,"

Page 3 - FINDINGS AND RECOMMENDATION

but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

In support of its motion, defendant argues that (1) plaintiff's state law claim is completely preempted by § 301 of the LMRA, and (2) plaintiff is preempted from bringing a § 301 claim because she failed to allege, and cannot prove, that she exhausted the mandatory grievance procedures under the CBA, or alternatively, that ONA breached its duty of fair representation.

A. Preemption of Plaintiff's State Law Wage Claim

In her complaint, plaintiff alleges that defendant violated ORS 652.120 and ORS 652.615 by failing to pay wages due and owing to her by virtue of defendant's miscalculation of her wages for extra shifts. The CBA establishes that the defendant must pay extra shift premium pay for hours worked above a nurse's regularly scheduled hours. (#14 at 4). Defendant argues that plaintiff's state law wage claims are preempted by § 301 of the LMRA because the resolution of her claims require an interpretation of the extra shift provision in the CBA. (#6 at 5).

Section 301(a) of the LMRA gives federal courts exclusive jurisdiction over "[s]uits for violation of contracts between an employer and a labor union." 29 U.S.C. § 185(a). The Supreme

Page 4 - FINDINGS AND RECOMMENDATION

Court has adopted the doctrine of complete preemption for § 301 of the LMRA in which the LMRA preempts any state law claim whose resolution substantially depends upon an analysis of a CBA. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985) ("If the policies that animate § 301 are to be given their proper range . . . the pre-emptive effect of § 301 must extend beyond suits alleging contract violations."). Therefore, the preemptive effect of § 301 reaches not only state law breach of contract claims, but any state law claim that is either based in the provisions of the CBA, or requires interpretation of the CBA. Id.

To assist in analyzing preemption of state law claims under § 301, the Ninth Circuit has set forth a two step analysis that is consistent with the Supreme Court's cases on the issue. Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir. 2007). In the first step, the court determines whether the plaintiff's state law claim is independent of rights conferred in the CBA. Id. If the court finds that the rights underlying the plaintiff's state law claim exists solely by virtue of the CBA, the claim is preempted under § 301. Id. at 1059. However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301...." Lueck, 471 U.S. at 211. Indeed, the Supreme Court has held that § 301's preemption cannot be read so broadly as to "preempt nonnegotiable rights conferred on individual employees as a matter of state law. . . ." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). If the court determines that the state law claim is independent of the CBA, it moves on to step two in the analysis.

In step two of the analysis, the court considers whether the independent state law claim is "substantially dependent" on the CBA. Burnside, 491 F.3d at 1060. A state claim is "substantially dependent" on a CBA if its resolution requires the interpretation of the CBA. Id. If the state law claim requires interpretation of the CBA, it is preempted under § 301. Id. In the context of § 301

Page 5 - FINDINGS AND RECOMMENDATION

preemption, the Ninth Circuit has narrowly defined the term "interpret" to mean "something more than 'consider,' 'refer to,' or 'apply.'" Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000). Thus, a plaintiff's claim is not preempted if the court merely needs to "look to" the CBA. Burnside, 491 F.3d at 1060. Furthermore, the Ninth Circuit has held that the possibility that a court may need to read and apply CBA provisions that "detail fairly complicated procedures and contain a hefty dose of industry jargon" does not constitute "interpretation" where the meaning of the provisions are neither uncertain nor ambiguous. Balcorta, 208 F.3d 1109.

A number of state wage claims have survived § 301 preemption. For example, in Gregory v. SCIE, LLC, an employee sued his employer under a California statute that set premium pay overtime rates. 317 F.3d 1050, 1051 (9th Cir. 2003). The CBA provided for overtime pay, but the employee sued under California law alleging that the amount he received was not consistent with the rate set by state law. Id. The Ninth Circuit held that the employee's claim was independent of the rights in the CBA and that the CBA would not need to be interpreted to resolve his claims. Id. at 1053. The court explained that the issue was not how the overtime rates were calculated, but rather was whether the result of the calculation complied with state law, thus resolving the plaintiff's claims would only require a court to compare the rate he received in his earnings reports to the rate required by law. Id.

Likewise, in Balcorta, the Ninth Circuit held that an employee's state law claim was not preempted by § 301. 208 F.3d at 1110. In that case, the employee sued her employer under a California law that assessed a penalty on employers who fail to pay an employee within 24 hours of termination. Id. at 1109. While the employer had paid the employee the wages due and owing, it had failed to do so within the statutory time period. Id. First, the employer argued that the claim was

Page 6 - FINDINGS AND RECOMMENDATION

preempted by § 301 because the CBA would have to be interpreted to determine whether the plaintiff was "discharged." Id. The court rejected this argument and held that while the CBA's provisions concerning "discharge" would need to be read and applied to resolve the state claim, the meaning of the CBA provisions was not ambiguous and would not require interpretation. Id. Second, the employer argued that the CBA would have to be interpreted in order to determine what constituted timely payment of wages. Id. at 1109. Again, the court rejected this argument and explained that the CBA's timing requirement was irrelevant to determining plaintiff's state law claim because violation of the state law was based on the terms of the statute, not the terms of the CBA. Id. at 1110.

However, not all state law wage claims survive § 301 preemption. In Baumgardner v. Smurfit-Stone Container Corp., upon which defendant relies, the District Court of Oregon held that § 301 preempted plaintiffs' claim that their employer violated ORS 652.120 when it failed to continue paying health care benefits under a CBA. 347 F. Supp. 2d 927, 930-31, 936 (D. Or. Dec. 2, 2004). In that case, the CBA stated that the employer would provide health care benefits to the employees, but that the plan administrator could terminate the plan at any time. Id. at 930-31. When the third party provider did not renew the plan and the employer did not institute new coverage, the employees sued in state court for failure to pay wages. Id. at 931, 936. The plaintiffs argued that the unpaid "benefits" were wages, and therefore their employer violated the statute when it discontinued providing the benefits. Id. at 936. The court held that the plaintiffs' claim was preempted because its validity depended upon an interpretation of the CBA. Id.

For similar reasons, I find that plaintiff's claim is preempted by § 301. First, I conclude that plaintiff's state law claim is independent of her rights under the CBA. ORS 652.120 requires an employer to "establish and maintain a regular payday, at which date the employer shall pay all wages

due and owing to them." ORS 652.120(1). Defendant argues that plaintiff's claim for extra shift premium pay is purely a contractual right vested to her in the CBA, and that there is no independent statutory basis for her claim. (#17 at 3). However, Oregon courts have broadly interpreted the term "wages" in ORS 652.120 to mean "'compensation' for services provided by an employee to his employer." Allen v. Cnty. of Jackson, 191 Or. App. 185, 199 (2003) (quoting Walker v. American Optical Corp., 265 Or. 327, 333 (1973)). Thus, while CBA provides a contractual right to extra shift premium pay and sets the conditions of that right, plaintiff has an independent state law right to be paid for any and all shifts she worked, including extra shifts because they represent a "service" provided to the defendant under ORS 652.120. The fact that plaintiff could pursue a grievance under the CBA on "precisely the same set of facts" is not sufficient in and of itself to trigger preemption under § 301. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988).

However, despite the fact that plaintiff's right to payment for extra shift exists independently of the CBA, her claims are still preempted under § 301 because validity of plaintiff's claims are dependent upon an interpretation of the CBA. Like the plaintiffs in Baumgardner, the validity of plaintiff's state law wage claims rests directly on an interpretation of her rights under the CBA. This case is distinguishable from cases like Gregory and Balcorta, where the plaintiffs sued under state statutes that specifically provided for the rights sought to be enforced. In contrast, in this case, the plaintiff's state law wage claim is dependent upon a determination that there was a breach and violation of the CBA. In order to make that determination, the court will need to interpret the disputed CBA language that relates to the extra shift premiums to decide whether plaintiff was entitled to extra shift premium pay for the shifts she worked. This determination is not as straight forward as the ones conducted in Gregory or Balcorta, because the language of the extra shift

Page 8 - FINDINGS AND RECOMMENDATION

provision is in dispute and is subject to varying interpretations. For example, the extra shift provision states that "Full-time and part-time nurses will be paid at one and one-half (1 ½) times their regular straight-time rate of pay for all hours worked above the nurse's regularly scheduled FTE except when there is a change of schedule agreed upon by the Medical Center and nurse." (#7-3 at 43). Thus, a court could not simply read and apply the provision to determine if plaintiff received the appropriate pay based on the hours she worked, but would have to interpret the provision to determine if, under that provision, the nurse was in fact eligible for extra shift premium pay. Because such a determination requires a court to do more than just reference, read, and apply the CBA, plaintiff's state law claims are preempted under § 301.

This outcome would be different, however, if plaintiff's claim was based on a state law that provided a mandatory overtime rate like the California statute in <u>Gregory</u>. In such a case, the court would only need to look to her earnings reports and hours worked, and compare the rate she received to the rate required by state law. Such a determination, as the <u>Gregory</u> court explained, requires no interpretation of the CBA because the state law sets forth the rate that is required and the conditions that trigger it. That determination is distinguishable from what a state court would have to do in this case because the Oregon law that plaintiff is suing under does not set forth the conditions and rates of overtime that are required by law. Thus, the court must not only reference the CBA, but must interpret its provisions to determine whether plaintiff is entitled to the extra shift payments. Therefore, because plaintiff's recovery under state law is dependent upon a determination of her rights under the CBA, her claims are preempted under by § 301.

B. Motion for Summary Judgment

If, as in this case, the resolution of a plaintiff's state law claim is substantially dependent upon an interpretation of the CBA, the claim must either be (1) treated as a § 301 claim; or (2) dismissed as preempted by § 301. Lueck, 471 U.S. at 220. Defendant argues that plaintiff's claim is preempted by § 301 because she fails to allege, and cannot prove, that she exhausted the mandatory grievance procedures in the CBA, or that ONA breached its duty of fair representation.

Under § 301, an employee can sue an employer for breach of a CBA. 29 U.S.C. § 185(a). However, if the CBA prescribes mandatory grievance or arbitration procedures for the resolution of CBA-related disputes, an employee must first exhaust those procedures prior to filing a § 301 claim. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 985-86 (9th Cir. 2007) (citing United Paperworkers Int'l. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37 (1987)). An exception to the § 301 exhaustion requirement exists, however, where the employee demonstrates that its union breached its duty of fair representation. Id. at 986. Thus, under § 301, if a plaintiff does not allege, or cannot prove, that she exhausted the mandatory grievance procedures in the CBA, she must prove two violations in order to proceed: first, that the employer violated the CBA, and second, that the union breached its duty of fair representation. Id. at 987. Therefore, if the plaintiff does not allege, or cannot prove either exhaustion or breach of her union's duty, she cannot maintain a § 301 claim.

Here, the CBA prescribes a five step mandatory grievance procedure which states that "[p]roblems arising in connection with the application or interpretation of the Agreement shall be submitted as a grievance in accordance with the procedures of this Article. . . ." (#7-3). This five step procedure ends with binding arbitration between the parties. Id. Therefore, because a mandatory grievance procedure exists in the CBA, plaintiff can only maintain a claim under § 301 if she can prove that she exhausted her remedies under the CBA, or that the union breached its duty of fair

representation.

In this case, plaintiff has failed to allege that she exhausted her contractual remedies. Neither plaintiff's complaint, nor her response to this motion makes any allegation that she exhausted the mandatory grievance procedures in the CBA. Instead, plaintiff argues that the CBA does not require her to arbitrate a violation of statutory rights–only violations of the CBA. (#14 at 10). Yet, this argument presumes that plaintiff's state law claim is not preempted under § 301. As explained above, however, plaintiff's state law claim is preempted under § 301. This preemption transforms plaintiff's state law claim into a § 301 claim, which requires exhaustion of mandatory grievance procedures as a precondition to filing.

Furthermore, plaintiff cannot prove she exhausted her contractual remedies. Plaintiff's complaint alleges that defendant failed to pay her for extra-shifts "over the prior years." (#1-2 at ¶4). However, the record shows that since 2003, the only grievance filed by plaintiff was the June 1, 2010 grievance which involved the defendant's procedure for posting an operating room shift that had become available in April 2010. (#8 at ¶10). The record shows, and plaintiff does not dispute, that plaintiff only took this grievance to Step Two of the five step grievance procedure in the CBA. Therefore, because there is no dispute that plaintiff failed to exhaust her contractual remedies for that grievance, defendant's alleged CBA violation during that time period cannot be the basis of a § 301 claim. Furthermore, because this is the only grievance filed by the plaintiff since 2003,[1] any alleged CBA violation since 2003 cannot support a § 301 claim because plaintiff has failed to produce

---

[1] While ONA did file the 2010 grievance on behalf of the bargaining unit, of which plaintiff is a member, plaintiff does not allege that the settlement of that grievance constitutes an exhaustion of her contractual remedies. To the contrary, plaintiff argues that there was no settlement of the ONA grievance. (#14 at 9).

Page 11 - FINDINGS AND RECOMMENDATION

specific evidence that she exhausted the mandatory grievance procedures during that time and is now time-barred from doing so under the CBA.[2] Therefore, plaintiff has failed to allege, and cannot prove that she exhausted the mandatory grievance procedures under the CBA as is required by § 301.

Because plaintiff does not claim to have exhausted her remedies, and cannot prove she did so, her claim can only proceed under § 301 if she can demonstrate that ONA breached its duty of fair representation in the grievance procedure. In this case, plaintiff's complaint and her response to this motion lack any allegation that ONA breached its duty of fair representation. Furthermore, even if plaintiff could prove ONA breached its duty of fair representation, she is time-barred from doing so under § 301. Employee suits under § 301 alleging that a union breached its duty of fair representation are subject to a six month statute of limitation. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 171-72 (1983). As a result, even if plaintiff could prove that ONA breached its duty of fair representation, and thus escape the § 301 exhaustion requirement, she would be barred from doing so because her complaint was filed more than six months after the occurrence.

Therefore, summary judgment should be granted because plaintiff has failed to allege and cannot prove that she exhausted her contractual remedies, or alternatively, that ONA breached its duty of fair representation.

## Recommendation

---

[2]Article 16 of the CBA states that "The employee shall first submit a written grievance...within fourteen (14) days of the time when the employee should reasonably have known of the occurrence on which the grievance is based, but in any even within forty-five (45) days following the occurrence of the matter being grieved." (#7-3 at 32). This term of the 2009-2011 CBA is consistent with the language of prior CBAs between defendant and ONA. (#s 7-1, 7-2, and 7-4).

For the foregoing reasons I find that plaintiff's state law wage claims are preempted under § 301 of the Labor Management Relations Act and that plaintiff has failed to allege, and cannot prove, facts sufficient to support a claim under § 301. Therefore, I recommend that defendant's motion for summary judgment (#5) be granted.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this _21_ day of February 2013.


_____
THOMAS M. COFFIN
United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION